UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re                                            )
                                                 )
DANIEL STONE and,                                )      Case No.  6:06-BK-03161-KSJ
TIFFANY STONE,                                   )      Chapter 7
                                                 )
        Debtors.                                 )
                                                 )
_____              )

S & S PLUMBING & HEATING,                        )
                                                 )
            Plaintiff,                           )      Adversary No. 6:07-AP-14-KSJ
vs.                                              )
                                                 )
DANIEL L. STONE,                                 )
                                                 )
        Defendant,                               )
                                                 )
_____              )


MEMORANDUM OPINION
GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The plaintiff, S & S Plumbing and Heating ("S & S"), filed a motion for summary
judgment (the "Motion") (Doc. No. 10) against the debtor and defendant, Daniel L. Stone
("Stone"), arguing that a judgment it holds against Stone should be excepted from discharge
pursuant to Bankruptcy Code[1] Sections 523(a)(2), (a)(4),[2] and (a)(6).  The Motion raises two
legal issues: (i) whether collateral estoppel applies to an Iowa state court judgment entered
against Stone; and (ii) if collateral estoppel applies, whether the Iowa judgment is a sufficient
fulcrum for rendering Stone's debt to S & S non-dischargeable under any or all of the exceptions
to discharge pled in S & S' complaint.  As will be explained, the Court holds that collateral
estoppel applies and that the judgment supplies the essential elements for non-dischargeability

_____

[1]  Unless otherwise stated, the term "Bankruptcy Code" used herein refers to Title 11 of the United States Code.
[2]  In its Complaint and Motion for Summary Judgment, S & S argued for non-dischargeability pursuant to Sections
523(a)(2), (a)(4), and (a)(6), while in its Memorandum of Law,  S & S argued for nondischargeability pursuant only
to Sections 523(a)(2) and (a)(6).

pursuant to Section 523(a)(2)(A).  Accordingly, Stone's debt to S & S is excepted from his discharge.

Stone's debt to S & S arises from a judgment awarding S & S $28,075.18 in damages against Stone, accruing interest at a rate of 19.8 percent, and attorney's fees in the amount of $8,000.00.  In its judgment, entered on May 3, 2006, the Iowa District Court for Johnson County made substantial factual findings, which in relevant part, are summarized below.

In June 2004, Stone, through a corporation he organized and controlled, TLD Custom Homes ("TLD"), began building a home in Iowa.  TLD hired S & S to provide the plumbing and heating services for the new home, but ultimately failed to pay S & S for all of its services.  Instead, Stone appropriated funds designated for S & S for his own personal benefit.

Specifically, while Stone ran TLD, he also managed another corporation, LEC Services, Inc. ("LEC").[3]  On April 15, 2005, TLD wrote LEC a check for $31,000, for no legitimate business reason and at a time when TLD was not paying its own contractors, including S & S.  By May 2004, TLD was at least $40,000 in debt.  (Doc. No. 1, Exh. A, p. 4 ¶ 21). Stone was aware of TLD's financial distress yet, he continued to personally withdraw thousands of dollars from TLD. (Doc. No. 1, Exh. A, p. 4 ¶ 22).  Additionally, Stone submitted false invoices to the bank that financed the construction on TLD's projects in order to keep money flowing into TLD, which he then appropriated for himself.  Between June and August 2004, Stone personally withdrew at least $12,000 from TLD.   Stone's wife, Tiffany, would deposit the checks Stone signed into Stone's personal bank account.  Stone took these personal draws despite a TLD operating agreement prohibiting any withdrawal of funds if TLD was unable to timely pay its

---

[3] LEC occasionally lent TLD employees and shared office space with TLD. Otherwise, according to Stone, the two businesses were unrelated. (Doc. No. 1, Exh. A, p. 4 ¶ 19).

debts or if TLD's total assets were less than the sum of its total liabilities.  TLD clearly was not paying its debts on a timely basis when Stone pilfered TLD's funds.

An employee for S & S contacted Stone several times requesting payment for its services, but TLD never made any payment to S & S.  On August 23, 2004, S & S filed a mechanic's lien against the Iowa property. S & S recovered nothing from this lien because numerous other senior liens on the property already encumbered the property.  Ultimately, TLD was dissolved, and Stone moved to Florida.  S & S remains unpaid.

The Iowa state court, based on these findings, held that TLD was a sham corporation used to perpetuate a fraud.  TLD never properly funded the Iowa home construction project. Instead, Stone used TLD's funds for personal gain, depleting monies that were specifically intended to pay S & S for its services, in flagrant disregard of the operating agreement prohibiting such transfers if TLD was insolvent.  For these reasons, the Iowa state court pierced the corporate veil and found Stone personally liable to S & S for the work S & S performed on the Iowa home.

The Iowa state court also specifically held that Stone made fraudulent misrepresentations to S & S.  (Doc. No. 1, Exh. A, p. 7, ¶ 36). TLD/Stone entered into an agreement with S & S and requested additional work from S & S when TLD was insolvent and when Stone knew TLD could not pay S & S for its work.  Stone also submitted false invoices to the lending bank to personally obtain funds rightfully due to S & S.  The Iowa state court found that S & S reasonably relied on Stone's representations that TLD would pay S & S for the work it completed and that the misrepresentations and failure to pay were the proximate cause of S & S' damages.  (Doc. No. 1, Exh. A, pp. 7-8, ¶ 36).

Eventually, S & S sued TLD and Stone in the Iowa state court.  Stone and his wife hired an attorney and filed an answer to S & S' complaint. Stone was deposed, and the case was set for

trial. However, on the date of the trial, May 3, 2006, Stone failed to appear. Indeed, "[t]he halls of the courthouse were paged to no avail." (Doc. No. 1, Exh. A, p. 1 ¶ 21).

As it turns out, prior to the trial date, Stone decided to move to Florida.[4] He also decided not to return to Iowa to participate in the trial (although the trial date was properly noticed) and not to defend against S & S' complaint, due to the expenses he would have incurred having to travel back to Iowa. (Doc. No. 6, p. 2 ¶ h). The Iowa state court conducted the trial, and the issues raised in S & S' Complaint were litigated, albeit without Stone in attendance. Thereafter, the Iowa state court entered a judgment against Stone based on the facts proven by S & S in evidence it submitted in open court.  The judgment provides that Stone owes S & S damages of $28,075.18 plus interest accruing at a rate of 19.8 percent, as well as attorney's fees in the amount of $8,000.00.  Stone did not seek reconsideration of or otherwise appeal the Iowa state court's judgment.

S & S timely filed the complaint initiating this adversary proceeding against Stone on February 19, 2007, seeking a determination that its judgment is non-dischargeable pursuant to Bankruptcy Code Sections 523(a)(2)(A), (a)(4), and (a)(6). On March 6, 2007, Stone filed an answer (Doc. No. 6) to S & S' Complaint. On May 11, 2007, S & S filed the Motion arguing that it is entitled to a summary judgment, that the judgment debt it holds against Stone is non-dischargeable, and that Stone is collaterally estopped from relitigating the facts giving rise to the debt, as they were already decided by the Iowa state court after Stone was given a full and fair opportunity to defend against S & S' Iowa state court complaint, but chose not to. In this adversary proceeding, Stone failed to file a response to the Motion and did not appear at the hearing on the Motion held on June 21, 2007.[5]

---

[4] Stone has lived in Florida since February 2005. He filed his Chapter 7 petition in this court on November 22, 2006.
[5] Stone was personally advised of the date and time of the hearing at a pretrial conference, which he attended, held on April 26, 2007.

Pursuant to Federal Rule of Civil Procedure 56, made applicable by the Federal Rule of Bankruptcy Procedure 7056, a court may grant summary judgment where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party has the burden of establishing the right to summary judgment. Fitzpatrick v. Schlitz (In re Schlitz), 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986).  In determining entitlement to summary judgment, a court must view all evidence and make all reasonable inferences in favor of the party opposing the motion.  Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).  Therefore, a material factual dispute precludes summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In this case, no factual disputes have been raised. Therefore, an adjudication of the case by way of a summary judgment is appropriate.

The Eleventh Circuit Court of Appeals has held that the collateral estoppel law of the state that issued the prior judgment sought by a party to bar a subsequent proceeding determines whether the prior judgment can have a preclusive effect in a subsequent proceeding.  St. Laurent v. Ambrose (In re St. Laurent), 991 F.2d 672, 675-76 (11th Cir. 1993) (*citation omitted*); In re Hodges, 271 B.R. 347, 351 (Bankr.N.D.Iowa 2000) ("When a party in bankruptcy raises an issue already determined in a prior state court proceeding, the Bankruptcy Court applies that state's law of collateral estoppel to determine whether the issue will have preclusive effect."). Here, the judgment against Stone was entered in Iowa. Therefore, this Court must consider Iowa's applicable legal standard for collateral estoppel to determine whether S & S' judgment against Stone has a preclusive effect here.

In Iowa, courts have found collateral estoppel/issue preclusion to serve dual purposes. "First, the doctrine protects litigants by preventing the 'vexation of relitigating identical issues

with identical parties' <u>Hodges</u>, 271 B.R. at 351 (quoting <u>State ex rel. Casas v. Fellmer</u>, 521

N.W.2d 738, 740 (Iowa 1994), and "[s]econd, the doctrine promotes judicial economy by

preventing needless litigation." <u>Id.</u>  Iowa case law identifies four elements that must be satisfied

for a prior judgment to bar a subsequent proceeding:

> (1)   the issue decided in the prior action must be identical;
> (2)   the issue must have been raised and litigated in the prior action;
> (3)   the issue must have been material and relevant to the disposition of the prior action; and
> (4)   the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

<u>Grant v. Iowa Dept. of Human Services</u>, 722 N.W.2d 169, 173-74 (Iowa 2006). In this case, each

of the above elements is satisfied.

As to the first element, the fraud issues determined in the Iowa state court proceeding are

the same as those that this Court must consider in connection with the first exception to

discharge S & S pled in its Complaint—that under Bankruptcy Code Section 523(a)(2). Pursuant

to Section 523(a)(2)(A), a debtor cannot discharge a debt to the extent the debt is obtained by

"false pretenses, a false representation, or actual fraud, other than a statement respecting the

debtor's or an insider's financial condition".  11 U.S.C. § 523(a)(2)(A) (2005).  To establish

fraud pursuant to Section 523(a)(2)(A), a plaintiff must prove: (i) the debtor made a false

representation to deceive the creditor; (ii) the creditor relied on the misrepresentation; (iii) the

reliance was justified; and (iv) the creditor sustained a loss as a result of the misrepresentation.

<u>SEC v. Bilzerian</u> (<u>In re Bilzerian</u>), 153 F.3d 1278, 1281 (11th Cir. 1998).

As discussed by the Iowa state court, to establish a claim of fraudulent misrepresentation

under Iowa law, S & S had to demonstrate that: (1) Stone made a representation to S & S; (2) the

representation was false; (3) the representation was material; (4) Stone knew the representation

was false; (5) Stone intended to deceive S & S; (6) S & S acted in reliance on the truth of the

representation; (7) the representation was a proximate cause of S & S' damages, and, lastly, S &

S must prove; (8) the amount of its damages. Midwest Home Distrib., Inc., v. Domco Indus. Ltd., 585 N.W.2d 735, 738 (Iowa 2001). Thus, while worded slightly differently, the legal standard for non-dischargeability under Section 523(a)(2)(A) is the same as the legal standard for demonstrating fraudulent misrepresentation under Iowa law, so the first element of Iowa's collateral estoppel test, articulated above, is met.

Regarding the third and fourth elements of Iowa's collateral estoppel law, this Court finds that the issues in the Iowa proceeding were material, relevant, necessary, and essential to the judgment it entered. The Iowa state court explicitly found that the evidence in the court's record supported a finding of fraudulent misrepresentation. (Doc. No. 1, Exh. A, p. 7 ¶ 36). Accordingly, the third and fourth elements of Iowa's collateral estoppel test are also met.

Finally, regarding the second element of Iowa's collateral estoppel test, whether the issue was raised and litigated in the prior action, the Iowa Supreme Court has explained that "where a particular issue or fact is litigated and decided, the judgment estops both parties from later litigating the same issue. The entire premise of issue preclusion is that once an issue has been resolved, there is no further fact-finding function to be performed." Grant, 722 N.W.2d at 174 (quoting Colvin v. Story County Bd. of Review, 653 N.W.2d 345, 348-49 (Iowa 2002)).

Iowa bankruptcy courts use a sliding scale to determine whether the facts surrounding a state court judgment permit the application of collateral estoppel. Zio Johnos Inc. v. Ziadeh (In re Ziadeh), 276 B.R. 614, 619-20 (Bankr. N.D. Iowa 2002). On one end of the scale is a state court decision where the defendant never appeared and the court entered a default judgment. Id. This judgment would not have a preclusive effect. Id. On the other end of the continuum is a judgment rendered after a complete trial which will always have a preclusive effect, if all other conditions are met. Id. In cases falling somewhere between these two extremes, courts are

required to make a case-by-case determination about whether "the 'actually litigated' requirement is met under state law." <u>Ziadeh</u>, 276 B.R. at 619-20.

Iowa courts look to many factors in determining whether a judgment can have a preclusive effect where the judgment was rendered in circumstances falling between a simple default judgment and a judgment rendered after a full trial with all parties actively participating, such as is the case here.  Those factors include: 1) whether the judgment is a straightforward default judgment or a default judgment based on a motion for summary judgment with evidence supporting the judgment; 2) whether the debtor obstructed the judicial proceeding; 3) whether the debtor was represented by counsel; and 4) whether the debtor filed an answer. <u>See</u> <u>e.g.,</u> <u>Hodges</u>, 271 B.R. at 350; <u>Benson v. Dunbar</u> (<u>In re Dunbar</u>), Case No. 06-00074, Adv. No. 06-09079, 2007 WL 1087451, at * 3 (Bankr. N.D. Iowa Apr. 05, 2007); <u>Ziadeh</u>, 276 B.R. at 620.

In this case, Stone fully participated in the litigation up to trial, which he simply chose not to attend.  Although the judgment is styled as a "default judgment," the judgment is not a true "default judgment" in that it was not entered solely on Stone's failure to appear or failure to respond to S & S' complaint. Rather, Stone hired an attorney, filed an answer to S & S' complaint, and gave a deposition. When Stone ultimately did not appear at the trial, the evidentiary hearing proceeded without him.  Thereafter, based on that evidence, the Iowa state court entered the judgment.  Stone has filed no response to the Motion that would contradict these facts or that would challenge the accuracy of the findings made by the Iowa court.

Here, the second element of Iowa's collateral estoppel test clearly is satisfied. In connection with the complaint S & S filed in Iowa, Stone hired an attorney, filed an answer, gave a deposition, and then elected not to appear at trial.  The relevant issue of fraudulent misrepresentation was litigated and decided based on evidence put on by S & S in open court.  The evidence supplied by S & S provided the foundation upon which the Iowa state court

rendered its extensive factual findings supporting the judgment against Stone. No circumstances are present that would justify allowing Stone to relitigate the issues of false or fraudulent misrepresentations. Moreover, as Stone has not filed any response to the Motion in this Court and did not appeal the Iowa state court's judgment against him, it does not appear that even Stone continues to question the applicability of collateral estoppel to the Iowa judgment in this adversary proceeding or the non-dischargeable nature of the underlying debt to S & S.

For these reasons, the Court holds that collateral estoppel precludes Stone from relitigating the issues of fraudulent misrepresentation in this adversary proceeding. Stone's debt to S & S for $28,075.18 plus interest at a rate of 19.8 percent, and attorney's fees in the amount of $8,000.00 is non-dischargeable pursuant to Bankruptcy Code Section 523(a)(2)(A).[6]   A separate judgment consistent with this ruling shall be entered.

DONE AND ORDERED in Orlando, Florida, this 1st day of August, 2007.

_____
KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies furnished to:

Counsel for Plaintiff:  Jeffry R. Jontz, Swann & Hadley PA, 1031 W. Morse Blvd., P.O. Box 1961, Winter Park, FL  32789

Pro Se Debtor/Defendant:  Daniel L. Stone, 726 Eastlawn Drive, Celebration, FL  34747

---

[6] Because the debt is clearly non-dischargeable pursuant to Bankruptcy Code Section 523(a)(2)(A), a discussion of whether the debt is also non-dischargeable pursuant to Sections 523(a)(4) and (a)(6) is not merited.